STATE, Respondent, vs. GALLE, Appellant.

*December 8, 1933—January 9, 1934.*

*J. Charles Pile* of Dodgeville, for the appellant.

For the respondent there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Charlton H. James,* district attorney of Iowa county, and oral argument by *Mr. James* and *Mr. Messerschmidt.*

FOWLER, J.   The appellant assigns as error (1) the overruling of the defendant's plea in abatement; (2) refusal of the court to require the district attorney to elect on which counts of the information he would rely; (3) alleged improper statements made by the trial judge; (4) improper instructions to the jury; and (5) refusal of the court to discharge the defendant or grant a new trial because the verdict was "contrary to the law and the evidence."

(1) The plea in abatement alleged that the defendant had had no legal preliminary examination.  It was based upon the facts that the offenses charged were committed in a city of the fourth class and that the justice of the peace who conducted the examination was a justice of a town.   It is claimed that a town justice is without jurisdiction to hold examinations upon charges of offenses committed in such cities.

Under the general statute, sec. 360.01 (4), justices of the peace have jurisdiction to hold preliminary examinations upon charges of offenses committed anywhere in their respective counties.

Ch. 271, Laws of 1933, amended the statute prescribing the jurisdiction of police justices in cities to read as follows:

"Sec. 62.24 (2) (a) The police justice shall have the jurisdiction of a justice of the peace and exclusive jurisdiction of offenses against ordinances of the city.

"(b) No justice of the peace, except in cities of the fourth class, shall have criminal jurisdiction of offenses committed in the city, nor power to issue warrant for, examine, commit or hold to bail any person charged with an offense therein."

The amended statute was in force at the time of the commission of the offenses charged.   It is this amended statute

which the defendant claims deprives justices of the peace in towns of jurisdiction of offenses committed in cities of the fourth class.

The meaning of this statute as amended can best be indicated by comparing its terms with the same section of the statute as it stood in the statutes of 1925 and 1927.

Stats. 1925, sec. 62.24 (2):

"(a) The police justice shall have within the city the jurisdiction of a justice of the peace and exclusive jurisdiction of offenses against ordinances of the city.

"(b) No justice of the peace shall have criminal jurisdiction of offenses committed in the city, nor power to issue warrant for, examine, commit or hold to bail any person charged with an offense therein."

Stats. 1927, sec. 62.24 (2):

"(a) The police justice shall have the jurisdiction of a justice of the peace within the county and exclusive jurisdiction of offenses against ordinances of the city."

It will be observed that the 1927 statute does not contain paragraph (b) of the 1925 statute and that the language of (b) of the 1933 and 1925 statutes is identical except that in the 1933 statute the words "except in cities of the fourth class" are inserted in the words of the 1925 statute next after the words "no justice of the peace."

The statute of 1927 remained unchanged in the statutes of 1929 and 1931, so that as the statute stood before the passage of the 1933 amendment a justice of the peace under the general statute first stated, sec. 360.01, had jurisdiction to hold examinations on charges of offenses committed anywhere in the county, whether committed in a city of the fourth, third, or second class, or in a village or town. (Only cities of the third, second, and fourth classes are covered by ch. 62, as Milwaukee, the only city of the first class, operates under a special charter and is exempted from operation of the general city charter law by sec. 62.03.)

As above stated, paragraph (b) of sec. 62.24 (2) of the 1933 statute is in the precise terms of paragraph (b) of the 1925 statute, except for the phrase "except in cities of the fourth class" inserted next after the phrase "no justice of the peace." It was the manifest purpose of the 1933 amendment to restore the situation existing under the 1925 statute, except in the one particular indicated by the phrase "except in cities of the fourth class." Under the 1925 statute by paragraph (b) no justice of the peace had jurisdiction to hold examinations on charges of offenses committed in any city, whether of the fourth, third, or second class, but every justice of the peace did have jurisdiction of charges of offenses committed in villages and towns. The purpose of the 1933 amendment was to change the situation under the 1929 and 1931 statute which left the general statute operative on every justice of the peace and gave every justice of the peace of a city of any class or of a village or a town jurisdiction of offenses committed anywhere in the county, whether in a city of any class or in a village or a town, and to restore the situation of the 1925 statute except as to cities of the fourth class. This was accomplished by depriving justices of the peace in cities of the second and third classes from the general jurisdiction exercised under the 1929 and 1931 statute and leaving unaffected the general jurisdiction of justices in cities of the fourth class and of villages and towns as it stood in that statute. The general subject of sec. 62.24 (2) is jurisdiction of offenses committed in cities, not jurisdiction of justices of the peace. The latter is covered by the general statute, sec. 360.01. Also, the subject under consideration when the 1933 amendment was enacted was jurisdiction of offenses committed in cities, not jurisdiction of justices of the peace.

Consideration of facts of common knowledge supports this view of the purpose and effect of the 1933 amendment. Many cities of the fourth class are no larger, are even

smaller, than many villages. Justices in villages have jurisᵣ diction of offenses committed anywhere in the county except in cities of the second and third classes. With like reason justices of the peace in cities of the fourth class should have like jurisdiction. Moreover, many cities of the fourth class have no police justice at all. Sec. 62.24 (2), which relates to the police court of cities and the jurisdiction of police justices of offenses committed in cities, has no application whatever to such cities of the fourth class. Such cities should have some tribunal within their limits with jurisdiction of offenses committed therein. Under the 1931 statute justices of cities of the fourth class had such jurisdiction. The amendment as construed leaves to justices of the peace of such cities such jurisdiction, as well as leaving it to justices of the peace of towns and villages. On the other hand, cities of the second and third classes have either police courts or municipal courts within their limits, the justices or judges of which are presumably more competent and better qualified to take jurisdiction of offenses committed within their limits than the ordinary justice of the peace, and their exclusive jurisdiction is restored as it existed in the 1925 statute.

For the reason stated we consider that the justice of the peace of the town of Dodgeville, who conducted the preliminary examination of the defendant, had jurisdiction to do so, and the plea in abatement was properly overruled.

(2) This assignment of error is without semblance of merit. This court has many times held that it is within the discretion of the trial judge to grant or deny a motion to require the district attorney to elect on which count he will proceed. See 2 Callaghan's Wis. Dig. p. 1619, sec. 139.

(3) The remarks of the court that are objected to were made on receiving in evidence writings and statements of persons over objections by the state that manifestly should have been sustained. The remarks were to the effect that the matters objected to were not important or did not have

much bearing, but they would be received. In fact these matters were of no importance at all and had no bearing at all upon the issues. The attitude of the court was to let defendant's counsel put in evidence everything he offered, whether competent or not or material or not. We cannot perceive that this was prejudicial to the defendant. It is quite true that the receipt of the objectionable evidence, if at all helpful to the defendant, was rendered less helpful than it might have been but for the judge's remarks, but as the defendant was not entitled to any help at all from the objectionable evidence he can hardly complain of this. No good purpose would be served by detailing either the evidence wrongfully received or the remarks of the judge in connection with its receipt. We have considered both carefully, and can perceive no error except error in favor of the defendant, of which he may not effectively complain.

(4) The trial judge in instructing the jury defined murder in the third degree in the language of the statute, sec. 340.09, Stats., as follows:

"The killing of a human being without a design to effect death by a person engaged in the commission of any felony shall be murder in the third degree."

This was not error. He then instructed that an assault with intent to do great bodily harm is a felony. This was not error. He then stated that if the jury found from the evidence beyond a reasonable doubt that the defendant assaulted Mitchell with intent to do great bodily harm, and while so engaged he caused the death of Jackson, he was guilty of murder in the third degree. Fault is found with this instruction for omission of the words "without any design to effect death" in connection with the assault of Mitchell. The omission was not prejudicial to the defendant. It was in fact highly beneficial to him, as it impliedly permitted the jury to find the defendant guilty of third-degree murder although he designed to kill Mitchell, where-

as if he had such design he was guilty of murder in the first degree. The defendant may not effectively complain of errors that tend to help rather than harm him.

The trial judge also instructed the jury that if they found Jackson was suffering from hardening of the arteries and died "from the combined effects of the injuries inflicted upon him by the defendant and his disease;" or if they found that "such injuries accelerated or hastened his (Jackson's) death from the disease, then the acts of the defendant resulting in the injuries to the deceased must be deemed to have caused" his death. The objection made to this instruction is that it "assumes" that the defendant inflicted injuries upon Jackson. The "assumption" was under the evidence entirely proper. It is undisputed that the defendant ran over Jackson with the front wheels of his automobile at least twice. In so doing the defendant must have "inflicted injuries upon" Jackson.

(5) The question of defendant's guilt was manifestly for the jury. No useful purpose would be served by detailing the evidence. Counsel does not point out in what particulars, if any, he considers the verdict "contrary to law," unless his suggestion that the verdict is a "compromise verdict" falls under this head. His contention in this regard is that as the jury found the defendant guilty of the lowest degrees submitted as to homicide of Jackson and as to assault upon Mitchell, and accompanied their verdict with a recommendation of clemency, the verdict must have resulted from the consent of the jury or some of them to a verdict of guilty providing clemency were granted. We do not so view the matter.

*By the Court.*—The judgments of the circuit court are affirmed.